IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAPHNE LIVSEY, ) | |
|           Plaintiffs, ) | |
| ) | |
| v. ) | No.    09 C 3129 |
| ) | Judge Blanche M. Manning |
| ) | |
| ADVENTIST LAGRANGE ) | |
| MEMORIAL HOSPITAL, a/k/a ) | |
| ADVENTIST HEALTH SYSTEMS/ ) | |
| SUNBELT, INC. ) | |
|           Defendants. ) | |

## MEMORANDUM AND ORDER

Daphne Livsey filed suit claiming that Adventist violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*., by discriminating against her based on her race and her gender, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* by discriminating against her based on her age. Ms. Livsey also alleges a claim for hostile work environment under Title VII as well as a retaliation claim. Adventist LaGrange Memorial Hospital ("Adventist") moves for summary judgment as to all of the claims. For the reasons stated below, Adventist's motion for summary judgment is granted as to all claims.

**I.    Facts**

*General Background*

Adventist, a member of Adventist Midwest Health, employs over 1,100 employees at its 230 bed acute-care hospital located in LaGrange, Illinois. Ms. Livsey, a resident of Glen Ellyn, Illinois, is a former employee of Adventist who was terminated on December 17, 2008.

*Prior Litigation and Release*

In 2004 and part of 2005, Ms. Livsey was employed at Adventist Hinsdale Hospital, which is an affiliate of Adventist. In October 2005, Ms. Livsey transferred from Adventist Hinsdale Hospital to Adventist. During 2005, prior to her transfer from Adventist Hinsdale Hospital to Adventist, Ms. Livsey filed two separate charges of discrimination with the EEOC against Adventist Hinsdale Hospital. She subsequently filed a lawsuit against Adventist Hinsdale Hospital asserting claims in connection with the second of the two EEOC charges filed in 2005. That lawsuit was pending in the United States District Court for the Northern District of Illinois, Eastern Division and was assigned case number 07 C 5261.

Pursuant to a settlement and release in that case, Adventist, as an affiliate of Adventist Hinsdale Hospital, was released and discharged by Ms. Livsey from all claims concerning any act or omission prior to February 15, 2008. Thus, the claims presently before this court concern only the time period of Ms. Livsey's employment with Adventist from February 16, 2008, through her termination on December 17, 2008.

*Ms. Livsey's Current Claims Against Adventist*

On April 17, 2008, Ms. Livsey filed her first charge of discrimination against Adventist before the EEOC ("First Charge"). The First Charge was assigned charge number 440-2008-04959, and complains only of race, sex, and age discrimination, and retaliation; it does not complain of or mention the terms harassment or hostile work environment. In December 2008, Ms. Livsey filed her second charge of discrimination against Adventist before the EEOC ("Second Charge"). The Second Charge was assigned charge number 440-2009-01385 and complains only of retaliation; it does not complain of or mention the terms harassment or hostile work environment. At the time Ms. Livsey filed the First Charge, the Second Charge, and the Complaint in this litigation she was represented by her attorney, Michael Smith. Mr. Smith is the same attorney who represented her in the prior litigation against Adventist Hinsdale Hospital that resulted in the previously-mentioned release.

In this lawsuit Ms. Livsey purports to complain of eight different alleged events at Adventist between February 15, 2008 and December 17, 2008. Specifically, she alleges that: (1) she was subjected to an unlawful hostile work environment and harassment; (2) her schedule in February and March of 2008 was unfair because she had to take more unpaid time off than others; (3) in August 2008, she was initially granted her birthday off, but then forced to work on that day for a discriminatory or retaliatory purpose; (4) she received two disciplinary write-ups in August 2008 for a discriminatory or retaliatory purpose; (5) she received two disciplinary write-ups and a suspension in October 2008 for a discriminatory or retaliatory purpose; (6) she did not receive an annual raise in October 2008 for a discriminatory or retaliatory purpose; (7) she submitted resumes for open positions at Adventist, but did not get those positions; and (8) she was terminated in December 2008 for a discriminatory or retaliatory purpose (Livsey Dep. at 171-175, 218, 245-46).

Ms. Livsey is now proceeding *pro se* in this litigation. During her deposition on June 10, 2010, her counsel, Joshua D. McCann, stated on the record following the lunch-break: "I've conferred with Michael Smith and [Ms. Livsey]. We have recommended to [Ms. Livsey] that she sign the stipulation to dismiss [this litigation with prejudice]. She has elected not to do so. Under the circumstances, we cannot go forward with the case and we will be withdrawing as soon as possible without causing undue hardship or prejudice to [Ms. Livsey]." Citing "an impasse in the[] relationship [between counsel and Ms. Livsey] due to this evidence which has caused an irretrievable breakdown in the direction of this case which inhibits counsel from being an effective advocate of the claims of [Ms. Livsey]," Ms. Livsey's counsel subsequently withdrew from this litigation on June 22, 2010, pursuant to court order.

*Ms. Livsey's Hostile Environment Claim*

At all times relevant to the complaint, Ms. Livsey worked at Adventist's main hospital campus in La Grange, Illinois, as a full-time radiology services assistant, performing such tasks as hanging x-ray films for the hospital's radiologists, answering calls, registering patients, making copies, and running small errands as needed by the radiologists. Ms. Livsey worked the second shift from 2:30 p.m. to 11:00 p.m. There were no other full-time radiology services assistants working the second shift. Four other full-time radiology services assistants worked the first shift from 6:00 a.m. to 2:30 p.m. Janet Narish, Adventist's Radiology Supervisor, supervised the full-time radiology service assistants. Ms. Livsey admits that Ms. Narish was a "very nice person", who was a "very flexible manager when it [came] to schedule modifications to [Ms. Livsey], and that she did not have any concern or issue with Ms. Narish."

Ms. Livsey does not complain about any conduct by anyone from her second shift. Because of their different work schedules, any overlap Ms. Livsey had with the four full-time radiology service assistants from the first shift was a "minimal part of [her] day." However, Ms. Livsey claims that her co-workers from the first shift: (i) left her what she perceived as hostile notes, and (ii) gave her the "cold shoulder" by being quiet when she walked in the room, gave her evil looks, and did not say "hello" to her when she greeted them. Ms. Livsey does not complain about any other alleged hostility from her co-workers and admits that she has no evidence that the alleged "hostile" treatment she claims to have received from her co-workers from the other shift was motivated by her age, race or gender. According to Ms. Livsey, she believes that her co-workers from the other shift treated her this way because they were upset about an article in a local paper called "The Doings" about her prior litigation against Adventist Hinsdale Hospital. Ms. Livsey concedes that it is equally possible that they treated her this way because they did not like her or like working with her. She further admits that none of her co-workers, supervisors, or any representative from Adventist's human resources department ever made any comments, wrote any notes, or left any messages that were based on or in any way made reference to her age, race, or gender.

With respect to the "cold shoulder" allegations, after July 2008, the minimal overlap Ms. Livsey had with her co-workers from the first shift had ended as Ms. Livsey arrived at work for the start of the second shift after her co-workers for the first shift had left for the day. As to the perceived "hostile" notes to her from her co-workers on the first shift, Ms. Livsey admits that the shifts left notes for each other as necessary. For example, if work did not get done on one of the shifts, that shift would leave a note for the next shift explaining what needed to be done.

According to Ms. Livsey, she received fewer than 20 notes from her co-workers that she considered negative. Livsey admits that the first two pages of Livsey Dep. Ex. 7 are representative of and similar to the notes she received on the second shift from the first shift that she considered to be "hostile." The first note stated, "Who did [Iron Mountain] on Friday evening and put every folder in the wrong spot? Clearly marked for Tuesday 5/27 and half were in reschedules and half in Thursday's slot. Thanks for the inconvenience and wasting half an hour of my morning." The second note stated, "This is halfway done. I refuse to do the rest.

[heart sign], Rich." Rich was one of Ms. Livsey's co-workers who worked the first shift.

Ms. Livsey also claims that on two occasions she received a note containing profanity. One such note stated "You fucked up." Ms. Livsey complained to Ms. Narish about the profanity and after her complaint, Ms. Livsey never received another note with profanity. To the extent Ms. Livsey received additional notes after her complaint about profanity to Ms. Narish, they were similar to or of the same type as the first two pages of Livsey Dep. Ex. 7 and described above. On June 3, 2008, Ms. Narish held a 30-minute meeting with the radiology services assistants from the first and second shifts and an Adventist Human Resources representative in attendance. She emphasized that any messages left by co-workers for one another must be professional and respectful. She further instructed the radiology assistants to contact her if necessary and noted that disciplinary action would follow if the assistants communicated with one another unprofessionally.

Ms. Livsey also claims that, in February 2008, a janitor at Adventist responded to Ms. Livsey's question "Where is my candy?" by grabbing his "crotch" and saying or suggesting, "Here's your candy." Ms. Livsey complained about the incident to Garry Giertuga, Director of HR for Adventist Hinsdale Hospital. Following her complaint to Mr. Giertuga, Ms. Livsey admits that no similar incident ever occurred again and the janitor never bothered her again. Following Ms. Livsey's complaint, Adventist met with the janitor in question and disciplined him for making this gesture by issuing him a written warning. To date, no future incidents have been reported to Adventist involving the janitor concerning Ms. Livsey or anyone else.

*Ms. Livsey's Termination*

On October 23, 2008, Ms. Livsey sent an email to Janet Narish and Garry Giertuga stating "I, Daphne Livsey, will not be into work today, nor the rest of the week. I will be taking my FMLA as soon as the doctor forwards all papers to Sharon, the nurse. Sorry for any inconvenient [*sic*] this may have caused. However my personal health is at stake. The mental anguish i [*sic*] endure during my tenor [sic] with Adventist Health Care for the past 4 years has been drastic. My health is now in question." According to Ms. Livsey, this email represented her request for a medical leave of absence.

Ms. Livsey did not report for work at Adventist at any time after her October 23, 2008, note and was continuously absent through and including the date of her termination on December 17, 2008. In response to her email, Adventist provided Ms. Livsey with a form entitled "Request for Medical Leave of Absence under the Family and Medical Leave Act" to be completed by her and a five (5) page form entitled "Certification of Health Care Provider" to be completed by her physician. Instead of returning the completed forms to Adventist, Ms. Livsey gave the certification form to her physician. Ms. Livsey does not know whether or not her physician completed the form or returned it to Adventist. Adventist never received either form back from Ms. Livsey or her physician at any time.

Ms. Livsey was represented by counsel during this time period. By a letter dated October

28, 2008, Sharon Johnson, an Adventist Benefits Specialist in Adventist's Human Resources office, informed Ms. Livsey that the "completed forms must be returned to me within 15 days. *Your time off from work cannot be approved and designated under the FMLA until these forms are received.*" Ms. Johnson also enclosed a copy of the FMLA forms. Ms. Livsey admits receipt of Ms. Johnson's letter dated October 28, 2008, sometime in November 2008. On November 19, 2008, having not received the above forms, Ms. Johnson sent Ms. Livsey another letter enclosing the forms yet again and explaining the need for receipt of the same. The letter explained
that the extension of time to return the completed forms had expired. The letter further stated that: "If I do not receive them within 10 days from the date of this letter, I will be unable to continue your FMLA leave or your undocumented absence from work. Failure to
return the forms by November 29, 2008 will result in cancellation of your leave and
you will be subject to termination from employment due to an undocumented
absence. Please do not jeopardize your leave or employment status by failing to
return the completed forms to me."

Ms. Livsey received and read Ms. Johnson's letter dated November 19, 2008, sometime in November 2008. Notwithstanding her receipt and reading of the letter, Ms. Livsey admits that she did not return the completed forms to Adventist within the requested time-frame. Instead of returning the completed and requested forms, Ms. Livsey submitted two notes dated November 26, 2008, from Dr. Elizabeth Wantuch. The first note stated only that Dr. Wantuch had examined Ms. Livsey on October 22, 2008, and that Ms. Livsey "is able to
return to work/school on 11/26/08 . . ." The second note from Dr. Wantuch stated that she had examined Ms. Livsey on November 26, 2008, and that Ms. Livsey "is able to return to work/school on 12/14/08 . . ." Both notes stated that Ms. Livsey's return to work was subject to the following limitations: "No lifting over 10 lbs (bucket of water). No climbing to high heights. Pt may have follow up appointments that she will need to miss work for."

Adventist did not consider the notes from Dr. Wantuch adequate because, among other things: (i) the restrictions listed (*i.e.*, lifting and climbing) had nothing to do with the claimed basis for the leave (*i.e.*, mental anguish); (ii) neither of the required forms had been completed and critical information was missing, including identification of the condition or the date of the onset of the condition necessitating the leave; and (iii) the notes did not purport to set forth the basis for or the need for Ms. Livsey's continuous and on-going absence since October 23, 2008. Also, although the notes bore the same date of November 26, 2008, they set forth different release-to-work dates.

On December 5, 2008, Sharon Johnson sent Ms. Livsey another follow-up letter. In this letter, Ms. Johnson acknowledged receipt of the two notes from Dr. Wantuch, but reiterated Adventist's strict policy that "[r]eceipt of the completed CHCPs [Health Care Provider Certification forms] [is] mandatory; moreover, the two aforementioned notes do not provide sufficient information to authorize your absence from work." Ms. Johnson also reiterated that "[f]ailure to return the forms by December 12, 2008 will result in cancellation of your leave and you will be subject to termination from employment due to an undocumented absence.

Page 5

Please do not jeopardize your leave or employment status by failing to return the completed forms by December 12, 2008."

Ms. Livsey admits that she received Ms. Johnson's December 5, 2008 letter, that she read and understood Adventist's position that the two notes she had submitted were inadequate, and that she read and understood that she had to return the completed forms to Adventist on or before December 12, 2008, or face termination. Despite this, Ms. Livsey did not return the requested forms to Adventist within the requested time-frame, and indeed, to this date, Adventist has never received the requested forms. Brandon Nudd, Director of Human Resources at Adventist, sent Ms. Livsey a letter on December 17, 2008, notifying her of her dismissal from employment because her failure to submit the documentation required for the leave had rendered her continuous absence since October 23, 2008, unauthorized and undocumented.

*Events Following Ms. Livsey's Termination*

Ms. Livsey admitted during her deposition in this case that she had begun a second, full-time job as a meter reader for Nicor, Inc. ("Nicor"), in September 2008, and that she held that position through her termination from Adventist in December 2008. As noted above, Ms. Livsey requested FMLA leave from Adventist in October 2008. In her full-time job for Nicor, Ms. Livsey had to drive a company car, walk up to ten miles per day, and operate a hand-held computer reading device. Ms. Livsey's shift for Nicor at all times was from 6:30 a.m. to 2:30 p.m. and she took lunch from 2:30 to 3:00 p.m. She worked forty hours per week. Nicor terminated Ms. Livsey on December 11 or 12, 2008. Ms. Livsey has since filed a charge of discrimination against Nicor.

Adventist's policy governing leaves of absence, which Ms. Livsey admits applied to her and governed her terms and conditions of employment, provides in relevant part:

> This facility has four types of leave of absence: (1) Medical-Related: Family Medical Leave Act (FMLA), Medical Leave and Extended Leave; (2) Personal Leave; (3) Educational Leave; and (4) Military Leave. . . . All leaves of absence are unpaid unless paid time off benefits, such as PDO, are available. . . . This facility discourages, but does not prohibit employees, from continuing pre-existing secondary 'moonlighting' employment while on an approved leave of absence. If you continue pre-existing secondary 'moonlighting' employment during your leave of absence, you will not be in violation of this policy, provided that: (1) you notify your supervisor of the other employment upon commencement of your leave of absence; and (2) the secondary employment does not involve job duties which you are restricted from performing in your facility job position.
>
> However, if you commence other employment (including self-employment) for personal gain, while on any type of leave of absence, you are subject to the following conditions: (1) you must notify your supervisor prior to commencing

the other employment; (2) you cannot engage in other employment that involves job duties that exceed any medical restrictions imposed by your health care provider and (3) you cannot commence or engage in other employment during your facility scheduled working hours. If you engage in other employment while on leave of absence, in violation of this policy, you are subject to termination from employment.

Ms. Livsey admits that she did not notify her supervisor or anyone else at Adventist at any time that she was working for Nicor. Following a review of Ms. Livsey's deposition transcript, Adventist notified Ms. Livsey that had Adventist known of her other employment, it would have immediately terminated Ms. Livsey, and in any event, Ms. Livsey should consider herself terminated as of June 24, 2010.

*Other Alleged Wrongdoing By Adventist*

With respect to Ms. Livsey's allegation that her hours were unfairly and unequally reduced in February and March of 2008, Ms. Livsey admits that all of her co-workers were asked to reduce their hours by using excused absences due to budget concerns. Ms. Livsey also admits that she does not know how many hours per week her coworkers were losing, how her hours compared with her co-workers, and that at least in the month of March 2008, other co-workers had to leave early as well. Ms. Livsey also admits that she has "no idea" as to whether other co-workers were leaving early or not in February 2008. Ms. Livsey admits that she has no evidence that her hours were reduced more than her co-workers, or that her race, gender, or age, or a retaliatory purpose was the reason for the reduction in hours.

Regarding Ms. Livsey's claim that Ms. Narish initially gave her the day off for her birthday on August 14, 2008, only to later reverse herself and require her to work that day, Ms. Livsey admits that she has no evidence to support her belief that she was required to work on her birthday because of her age, race, gender, or in retaliation for engaging in protected conduct. Ms. Livsey's supervisor, Janet Narish, asked Ms. Livsey to work on her birthday because Ms. Livsey missed the required training on the morning of August 11, 2008, and the only make-up class was on August 14, 2008. Ms. Livsey did not work her regular shift after attending the morning training session on August 14.

As to Ms. Livsey's claim that two disciplinary write-ups she received in August 2008 were discriminatory and/or retaliatory, the first incident was a "verbal counseling" that was given to Ms. Livsey on August 4, 2008, for clocking in fifteen minutes early on four dates in May 2008, six dates in June 2008, and seven dates in July 2008. None of the other Radiology Services Assistants had a similar attendance history of clocking in early. Ms. Livsey did not lose any pay because of the August 4, 2008, verbal counseling.

Ms. Livsey has no evidence that Ms. Narish did not believe that her reasons for issuing the verbal counseling on August 4, 2008, were valid. Ms. Livsey also admits she has no evidence to suggest that the August 4, 2008, verbal counseling was unlawfully issued to her on

the basis of her age, race, gender, or for a retaliatory purpose.

The second August 2008 write-up received by Ms. Livsey was a "written reminder" dated August 5, 2008, for leaving a note for her co-workers in violation of the June 2008 directive issued by Ms. Narish regarding notes. Ms. Livsey admits to leaving such a note, but she did not lose any pay as a result of this written reminder. Ms. Livsey admits she has no evidence in support of her contention that she received the written reminder dated August 5, 2008, because of her race, age, gender, or for a retaliatory purpose.

With respect to Ms. Livsey's claim concerning three disciplinary write-ups in October 2008, Ms. Livsey received a "verbal counseling" and a "written reminder" for being more than 45 minutes late on seven different occasions from October 6 through October 15, 2008. Ms. Livsey admits that she did not have approval to come in late on those dates and that she was, in fact, late as documented in her written discipline. Prior to receiving discipline for reporting to work late in October 2008, Ms. Livsey had tried to get approval from Ms. Narish to start her shift later but that approval was never granted. Ms. Livsey typed up, signed and submitted a letter to Ms. Narish requesting a later start time because, according to Ms. Livsey in her letter, she needed to be home with her son at that time "because of disciplinary reasons that he has incurred."

At her deposition, Ms. Livsey admitted that her shift started at Adventist at 2:30 p.m. and that on each of the days for which she was written up for being late in October 2008, she was (unbeknownst to Adventist) on her way from the end of her shift at Nicor. Ms. Livsey admits that she has no evidence to suggest that she was issued the October 2008 discipline for being tardy because of a discriminatory motive based on her age, race, or gender, rather than because she was in fact late to work on seven different occasions. According to Ms. Livsey, she "just felt" that it "was a retaliation of some of the issues that was (sic) going on between Adventist Hinsdale and [her]self." Nor does Ms. Livsey have any evidence to suggest or establish that anyone else at Adventist incurred the same number of tardies and was not disciplined in this fashion. As far as Ms. Livsey knew, she was the only one with that attendance record and the only one that received this discipline.

The second October 2008 write-up about which Ms. Livsey complains is Ms. Narish's October 17, 2008, write-up for inattention to detail including leaving the "mammo pull sheet three days in a row without any documentation." Ms. Livsey admits that she has no evidence or reason to believe that she did not make the mistakes described in the October 17, 2008, write-up. Also, Ms. Livsey admits that she has no evidence to suggest that Ms. Narish did not reasonably and honestly believe Ms. Livsey had made those mistakes. Ms. Livsey also contends that a three-day suspension she received on October 17, 2008, for insubordination was for a retaliatory purpose (Livsey Dep. at 239-244). Ms. Livsey's suspension followed a meeting where Ms. Livsey was confronted with the two prior October 2008 disciplinary write-ups described above.

At that meeting, Ms. Livsey admits that she only answered "yes" or "no", did not elaborate on her answers, and refused to give Adventist information it requested because she was

Page 8

not comfortable providing more information without her lawyer, Michael Smith, present. Adventist interpreted Ms. Livsey's refusal to elaborate and answer questions and participate in the meeting as insubordinate and warranting of a suspension. Other than the fact that she did answer with "yes" or "no," Ms. Livsey admits that has no evidence to support her contention that Adventist suspended her for a retaliatory or discriminatory purpose.

With respect to Ms. Livsey's claim that she was unlawfully denied an annual raise on October 17, 2008 (*i.e.* the same day she was suspended), Ms. Livsey admits that she does not know who, if anyone, received raises or in what amounts in October 2008. She further acknowledges that she has no evidence to suggest that the reason she did not receive an annual raise was because of her age, race, sex, or for a retaliatory purpose. Adventist contends that Ms. Livsey did not receive an annual raise because her performance rating for 2008 did not qualify her for a raise. With respect to Ms. Livsey's claim that she submitted resumes for different positions but received no interviews, Ms. Livsey admits that she has no evidence that she did not hear back on interview requests because of an unlawful discriminatory or retaliatory motive or purpose. Ms. Livsey admits that her belief is merely an assumption and that she has no evidence whatsoever of who received interviews (when she did not), what the qualifications were of those applicants, or who ultimately received those positions.

## II.     Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c). The court construes all of the facts and the reasonable inferences drawn from those facts in favor of the nonmovant. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008). The nonmovant, however, may not merely rest upon the allegations or details in their pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Before addressing the merits of Ms. Livsey's claims, the court notes that Adventist provided the notice to pro se litigants prescribed by Local Rule 56.2. Nevertheless, Ms. Livsey failed to properly respond to Adventist's statements of material fact. Instead of admitting a fact or denying it with a citation to the record as Local Rule 56.1(b)(3)(B) requires, Ms. Livsey instead states that she "agrees," "partly agrees" or "disagrees" with the statement and then provides a reason for her answer without any record citation. As noted by Adventist, Ms. Livsey's responses reflect her views as to what she believes occurred, but she fails to provide record support for these beliefs. While Ms. Livsey indicates on a few occasions that she has attached a deposition or article in support of her response, the documents are not attached and, in any event, she does not cite to any particular page numbers. The court appreciates that Ms. Livsey is proceeding pro se. Nevertheless, pro se litigants must abide by the same rules as those litigants who are represented by counsel. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (pro se litigants are not "excused from compliance with procedural rules"). Accordingly, any of Ms. Livsey's responses that disagree with the defendant's statements and

which are not properly supported are deemed admitted. *See* Local Rule 56.1(b)(3) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). *See also U.S. v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010) ("At summary judgment . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it [is] not the district court's job to sift through the record and make [the party's] case for him.").

### III. Analysis

#### A. Sex and race discrimination

The plaintiff may attempt to prove her race and sex discrimination claims using the direct or indirect method of proof. As to the direct method:

> A plaintiff can prevail under the direct method by showing an admission of discrimination or by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. If the plaintiff's evidence is thereafter contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation.

*Ridings v. Riverside Medical Center*, 537 F.3d 755, 771 (7th Cir. 2008) (internal citations and quotations omitted). "The focus of the direct method of proof ... is not whether the evidence offered is itself 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2010) (citation omitted).

As noted above, Ms. Livsey failed to properly respond to the defendant's statement of facts or offer her own supported statement of additional facts. In light of the complete lack of evidence supporting her case, her claims of sex and race discrimination must fail. Even if the court were to consider Ms. Livsey's unsworn statements, it would deny her claims for sex and race discrimination. As an initial matter, the plaintiff has not pointed to any admission of discrimination and indeed, she admits that she knows of no adverse or derogatory statements made by any of her superiors or co-workers based on her age, race, or sex. Defendant's Statement of Undisputed Material Fact, ¶ 20. To the extent that Ms. Livsey may be attempting to rely on a mosaic of circumstantial evidence that "points directly" to a discriminatory motive for her termination, this approach also fails. Ms. Livsey has pointed to no evidence from which a jury could infer intentional discrimination by Adventist.

The plaintiff may also proceed under the indirect method. To establish discrimination under the indirect method, the plaintiff must first demonstrate a prima facie case of discrimination. A prima facie case of discrimination consists of evidence that: (1) the plaintiff

Page 10

belongs to a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly-situated employees outside of the class more favorably. *See Peirick v. Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 687 (7th Cir. 2007). If the plaintiff succeeds in establishing a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Peirick*, 510 F.3d at 687. If the defendant does so, then the plaintiff must establish that the employer's legitimate, nondiscriminatory reason was merely a pretext for discrimination. *Id*.

Ms. Livsey has not established a prima facie case of discrimination under the indirect method because she has failed to point to any competent evidence establishing that similarly situated employees outside of her protected class were treated more favorably. Even assuming that Ms. Livsey had established a prima facie case under the indirect method, she has not pointed to any evidence that would create a genuine issue of material fact as to whether Adventist's reason for firing her--*i.e*., for continuous unexcused absence–was a lie. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (pretext "means a dishonest explanation, a lie rather than an oddity or an error") (internal quotes omitted).

Accordingly, the court grants Adventist's motion for summary judgment as to the race and sex discrimination claims.

B.  Age discrimination

With respect to the age discrimination claim, the plaintiff must demonstrate that she suffered an adverse employment action because of her age. *See Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 660 (7th Cir. 1993). The Supreme Court has recently stated that to prevail in an action under the Age Discrimination in Employment Act "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the 'but-for' cause of the challenged ... decision." *Gross v. FBL Fin. Servs., Inc*., --- U.S. ----, ----, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009). As the Seventh Circuit noted recently, "[w]hether [the] burden shifting analysis survives the Supreme Court's declaration in *Gross* in non-Title VII cases, remains to be seen." *Kodish v. Oakbrook Terrace Fire Prot. Dist*., 604 F.3d 490, 501 (7th Cir. 2010).

Again, as with her claims of race and sex discrimination, Ms. Livsey has not directed the court to any evidence, direct or circumstantial, from which a jury could conclude that the but for cause of her termination was age as opposed to the fact that she failed to appear for work for weeks on end without having made a properly documented request for FMLA leave.

C.  Retaliation[1]

---

[1] Ms. Livsey's complaint appears to include allegations of retaliation within the hostile work environment claim. However, in the interest of completeness and because the defendant

As with the sex and race discrimination claims, the plaintiff may attempt to survive summary judgment with respect to her retaliation claim under either the direct or indirect methods. *See Humphries v. CBOCS West, Inc*., 474 F.3d 387 (7th Cir. 2007) (citations omitted). Under the direct method, the plaintiff must present evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Id*. (citations omitted). "Where the plaintiff sets forth a direct case of retaliation, the plaintiff must demonstrate a triable issue of fact as to whether retaliation was the but-for cause of the adverse employment action." *Zitzka v. Village of Westmont,* --- F. Supp.2d ----, No. 07 C 0949*,* 2010 WL 3863237, at *20 (N.D. Ill. Sep. 28, 2010) (*citing Kodish,* 604 F.3d at 501).

Apparently, Ms. Livsey believes that she was retaliated against by Adventist LaGrange when she was terminated because of her previous case against Adventist Hinsdale. However, Ms. Livsey has pointed to no competent evidence suggesting that her previous case against Adventist Hinsdale was the but-for cause for her termination. To the extent that Ms. Livsey complains that she was retaliated against when she was required to work reduced hours, work on her birthday, was the subject of verbal warnings and disciplinary write-ups, and failed to be hired for positions for which she submitted her resume, again, Ms. Livsey has proffered no evidence that the prior case was the but-for cause for these actions, assuming *arguendo* that they constitute materially adverse actions.

Under the indirect method, Ms. Livsey must show that (1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Cracco v. Vitran Exp., Inc*., 559 F.3d 625, 634-35 (7th Cir. 2009) (citation omitted). Once a plaintiff establishes the prima facie case under the indirect method, the defendant must articulate a nondiscriminatory reason for its action; if he does, the burden remains with the plaintiff to demonstrate that the defendant's reason is pretextual. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007).

Ms. Livsey cannot succeed under the indirect method as she has failed to point to any competent evidence that she was treated less favorably than any similarly situated employees who did not engage in statutorily protected activity. In addition, she has failed to point to any evidence from which a jury could conclude that Adventist's reason for terminating her was pretextual.

Accordingly, Adventist's motion for summary judgment as to the retaliation claim is granted.

---

construes Ms. Livsey as alleging a separate retaliation claim, the court will also address the allegations of retaliation as a stand-alone claim.

D.  Hostile work environment[2]

"To pursue a hostile work environment claim, [a plaintiff] must prove (1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009). "In order to establish a prima facie case under this theory, a plaintiff must show, among other things, that she has been subjected to behavior so objectively offensive as to alter the conditions of [her] employment." *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (quotation marks omitted).

As an initial matter, Ms. Livsey has not pointed to any evidence whatsoever that the alleged conduct is based on her membership in a protected class; thus, Ms. Livsey has failed to meet the second element of a hostile work environment claim. Moreover, the conduct of which Ms. Livsey complains does not rise to the level of a hostile work environment. Even considering all the incidents noted by Ms. Livsey, including the derogatory and intemperate notes from employees on the first shift, the unfriendly behavior purportedly exhibited by her coworkers, the lewd comment by the janitor, the requirement that she work reduced hours and work on her birthday, the write-ups and verbal warnings, and the denial of an annual raise, these acts are not sufficiently severe or pervasive to create a hostile work environment. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004) (the workplace that is actionable is the one that is "hellish"). Accordingly, the motion for summary judgment as to the hostile work environment claim is granted.

**IV. CONCLUSION**

For the reasons set forth above, Adventist's motion for summary judgment [74-1] is

---

[2] Adventist first argues that the hostile work environment claim is outside the scope of the EEOC charges that Ms. Livsey filed because "they are not like or reasonably related to the allegations asserted in either charge." Defendants' Memorandum at 9. The court rejects this argument because the first EEOC charge dated April 17, 2008, expressly alleges that she was "sexually harassed." *See* Livsey Deposition Exh. 14, Exhibit "A."

granted. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

**ENTERED:**

**Date:** March 9, 2011                                   _____
                                                         **Blanche M. Manning**
                                                         **United States District Judge**